[Civ. No. 37861. Second Dist., Div. Five. Oct. 6, 1971.]

EDWIN N. ROTH, Petitioner, v.
WORKMEN'S COMPENSATION APPEALS BOARD,
E. R. SMITH et al., Respondents.

**COUNSEL**

Levy & Van Bourg and Marilyn S. Green for Petitioner.

Rupert A. Pedrin, Stanley S. Feinstein and Mort L. Clopton for Respondents.

## Opinion

**REPPY, J.**—This is a petition for a writ of review of the order of the Workmen's Compensation Appeals Board denying reconsideration of the dismissal of petitioner's application.

Petitioner, the applicant below, E. N. Roth (hereinafter, applicant), while serving as a chemical engineer in the employ of defendant E. R. Smith on May 10, 1960, was struck on the head by an iron fork weighing two to three hundred pounds. He was taken to a hospital where severe scalp lacerations were sutured. In 1960-1961, applicant was examined by numerous physicians, including specialists in orthopedics, neurology, surgery, physical medicine, and ophthalmology regarding complaints of pains and/or impairment in almost every part of his body, as well as nausea, vomiting, constipation, and irritability. Reports of these doctors indicated that, in addition to the scalp lacerations, there had been some musculo-ligamento-tendinous sprain, but that these actual injuries did not explain applicant's subjective complaints. Applicant was generally suspicious, hostile and uncooperative with the doctors.[1]

On December 13, 1963, applicant filed his application for workmen's compensation with the Industrial Accident Commission.[2] During the period from the filing of the application until the end of 1968, hearings were cancelled and/or the matter taken off calendar five times, and two notices of intention to dismiss for lack of prosecution were issued. The delays resulted from failure of applicant's counsel to appear, substitution of applicant's counsel, transfer of the locality of the hearing on applicant's request, and the need to afford defendants the opportunity for medical examination. During this period applicant proved very reluctant to undergo examination. He failed to appear for one on November 6, 1964. He did appear on December 11, by order of the commission issued at defendant's request, to be examined by Dr. Samuel W. Weaver, but he was very uncooperative. Dr. Weaver reported that the symptoms were not caused by physical damage and that he suspected malingering. On June 14, 1968, applicant was examined, at his own instance, by Dr. Robert MacLeod, a psychiatrist, who reported that "the physical symptoms are neither imaginary or contrived, but are the result of emotional conflict[s] that are

---

[1]All of the medical examinations in this case, except the one by Dr. Edward J. Wiater on May 23, 1961, and the one by Dr. Robert F. MacLeod on June 14, 1968, were at the behest of defendants.

[2]In 1965 the applicable labor code sections were amended to provide that the proceedings be before the "appeals board" rather than the "commission." (Stats. 1965, ch. 1513, p. 3555 et seq.) Post-1965 proceedings in the instant case were held by the Workmen's Compensation Appeals Board.

created or exacerbated by the injury and which find their expression in the form of physical symptoms" and that applicant's hostility and paranoia resulted from the exacerbating effect of the injury on his previously quiescent paranoid personality. However, apparently, a written report was not prepared or filed at that time.[3] On October 29, 1968, applicant's then attorneys by letter requested that the matter be set for hearing, and it was set for January 10, 1969. The main issue apparently was the "[n]ature, extent and duration of disability." On January 10, 1969, it was taken off calendar once again. The referee's minute order stated that applicant was ill and not able to attend the hearing. Except for the filing of the report of Dr. MacLeod (as indicated in fn. 3) and the filing of a change of address for petitioner on November 19, 1969, the matter seemingly lay quiescent until January 5, 1970. That was the date when applicant had an appointment with Dr. Eugene Malitz for a psychiatric examination. However, when he arrived he declined to fill out the routine information slip, saying that the information should be obtained from the insurance company. He became loudly indignant when his wife was not allowed to be with him during psychological tests which were to be given by Dr. Malitz' psychometrist. Feeling that "a satisfactory examination could not be obtained under those circumstances," Dr. Malitz excused applicant.

By letter dated January 14, 1970, defendants requested dismissal for lack of prosecution based on "applicant's persistent and determined efforts to thwart any reasonable medical evaluation by defendant's doctors." On February 3, the Workmen's Compensation Appeals Board issued a notice of intention to dismiss. After receiving a letter from applicant, dated February 8, 1970, stating that he was searching for a more qualified attorney and that the case would be prosecuted, a Workmen's Compensation Appeals Board referee wrote the parties on February 19, 1970:

"Inasmuch as it appears that Mr. Roth intends to obtain a new counsel, further proceedings in this matter will be suspended for ninety days. Thereafter, the matter will be set for trial. In the event that Mr. Roth fails to appear at that time, the matter will be dismissed.

"It will be necessary that both parties be prepared to proceed when the matter is set. In preparation for trial, defendants are entitled to further medical evaluation and if Mr. Roth fails in any way to cooperate in that examination, the matter will be dismissed."

On April 10, 1970, applicant consulted his present firm of attorneys. Although not formally substituted at this time, by contacting the referee's

[3] The report is dated January 16, 1969, and was sent in for filing by petitioner's then attorneys on January 27, 1969.

office, the attorney assigned to his case learned of the February 19 action. In the petition for reconsideration and petition for writ of review, it is alleged that counsel was told only of the order regarding failure to attend the hearing, not regarding failure to cooperate in the medical examination, and was advised that the matter would be reset for hearing on the referee's own motion. The petition for writ of review also states that "neither applicant's present attorney, nor[,] to his information and belief[,] his past attorney," were ever served with the February 19 letter.

On March 18, applicant returned to Dr. Malitz's office for a scheduled phychiatric examination but was excused when he again insisted on the presence of his wife.[4] Defendants filed the doctor's letter to this effect with the referee with an accompanying letter (dated March 25, 1970) which stated: "We presume that the matter will proceed to disposition as indicated by the Referee's letter of February 19, 1970." However, the referee took no action.

On June 1, applicant's present attorneys filed a substitution of attorneys and wrote defendants inquiring as to whether they still wished an additional medical examination. Defendants replied that they did and inquired into the possibilities of settlement. Defendants arranged for an examination, again with Dr. Malitz, to be held on September 28. On August 7, applicant's attorney received a copy of a letter to that effect. Applicant claims, as shown in a letter he wrote to his attorney which was submitted in support of the request for vacation of dismissal and of the petition for reconsideration, that he was never notified of the appointment. On September 25, applicant's attorney sent defendants a proposal for settlement.

In a communication dated October 1, defendants submitted to the referee a letter from Dr. Malitz indicating that applicant had failed to appear for his September 28 appointment, directing the referee's attention to the February 19 order, and requesting dismissal for lack of prosecution based on applicant's failure to cooperate in the September 28 and previous examinations. Applicant's attorney received a copy of the communication on October 5. On October 14, the referee, without noticing an intention (as had been done thrice before), ordered the matter dismissed "Pursuant to the Referee's letter of February 19, 1970, and GOOD CAUSE APPEARING THEREFORE." Filing a letter from applicant indicating that he had not been notified of the appointment, applicant's attorney requested that the dismissal be vacated, and filed a petition for reconsideration. The petition was considered, on behalf of the Workmen's Compensation Appeals Board,

---

[4]Apparently, because of his suspicions, applicant wanted his wife present on such occasions to observe, and, possibly, to take notes on what took place.

by a referee who submitted his opinion recommending its denial. The Workmen's Compensation Appeals Board followed the recommendation. It adopted the referee's opinion, which stated "It is submitted that applicant's failure to cooperate in the examinations by Dr. Malitz is merely the latest event in a long series of obstructionistic tactics on the part of applicant and is tatamount [sic] to failure to appear for examinations by the doctors and is a basis for Dismissal herein."

Applicant has petitioned this court for a writ of review to inquire into the lawfulness of the order denying reconsideration of the dismissal. We have determined that the order of dismissal was in violation of the Labor Code and the Workmen's Compensation Appeals Board Rules of Practice and Procedure. (Cal. Admin. Code, tit. 8, ch. 4.5, subch. 2.) The validity of the dismissal is open to question both because of the probable reasons behind it and because the procedures followed failed to meet due process of law. ■ Although the Labor Code does provide that the applicant has a duty to submit to medical examinations at the request of his employer (Lab. Code, § 4050)[5] the only sanctions specified for failure to submit or for obstruction of the examination are suspension of the right to maintain proceedings for the collection of compensation (Lab. Code, § 4053)[6] and suspension of the right to disability payments accruing during the period of failure or obstruction (Lab. Code, § 4054).[7] (See Burgess v. Bethlehem Steel Co., 8 Cal.Comp.Cases 214; Weymouth v. Mechanical Pattern and Foundry Company, Associated Industries Insurance Corporation, 14 I.A.C. 147; Parini v. Selby Smelting and Lead Company, 2 I.A.C. 216; Bianchini v. Selby Smelting and Lead Company, 2 I.A.C. 219; 55 Cal.Jur.2d, Workmen's Compensation, § 194, p. 232. Hanna, California Law of Employee Injuries and Workmen's Compensation (2d ed. 1970)

[5]Labor Code section 4050: "Whenever the right to compensation under this division exists in favor of an employee, he shall, upon the written request of his employer, submit at reasonable intervals to examination by a practicing physician, provided and paid for by the employer, and shall likewise submit to examination at reasonable intervals by any physician selected by the administrative director or appeals board or referee thereof."

[6]Labor Code section 4053: "So long as the employee, after written request of the employer, fails or refuses to submit to such examination or in any way obstructs it, his right to begin or maintain any proceeding for the collection of compensation shall be suspended."

[7]Labor Code section 4054: "If the employee fails or refuses to submit to examination after direction by the appeals board, or a referee thereof, or in any way obstructs the examination, his right to the disability payments which accrue during the period of such failure, refusal or obstruction, shall be barred."

Medico-Legal Procedure, § 12.02 (2), pp. 12-14, 12-15.)[8] There is no provision for dismissal.

Dismissal is permitted under the following circumstances:

"Where it appears of record that a party was served with notices of hearing, but fails to appear at such hearing, either in person or by attorney or other agent, the Appeals Board or referee may take the case off calendar; may after notice, dismiss the proceeding; or may hear the evidence and, after notice, make such decision as is just and proper." (Cal. Admin. Code, tit. 8, § 10562; see Hanna, *supra,* Original Proceedings, § 5.02 [5], pp. 5-20, 5-21.)

"Cases will be removed from the active calendar by an order taking off calendar for good cause. Such cases will be restored to the active calendar upon the written request of a party.

"Unless such cases are activated for hearing within six months next after entry of said orders, the proceedings may be dismissed after notice and opportunity to be heard. Such dismissals may be entered at the request of an interested party or upon the Appeals Board's own motion." (Cal. Admin. Code, tit. 8, § 10582; see Hanna, *supra,* § 4.03[6], pp. 4-8, 4-9; Supplementary [etc.] Proceedings, Procedure, § 9.04[4][a], pp. 9-39, 9-40.)

"If an application shows upon its face that the applicant is not entitled to compensation, the appeals board may, after opportunity to the applicant to be heard orally or to submit his claim or argument in writing[,] dismiss the application without any hearing thereon. Such dismissal may be upon the motion of the appeals board or upon motion of the adverse party. . . ." (Lab. Code, § 5507; see Hanna, *supra,* Appeals Board Procedure, § 4.03[4], pp. 4-8.[9]

When applicant did not appear for the January 10, 1969, hearing, defendants could have asked for dismissal under section 10562. Apparently no such request was made; nor did the referee choose to follow the 10562 dismissal option on his own initiative. The referee accepted applicant's explanation of illness and chose the 10562 option of taking the case off calendar. An opportunity to dismiss under section 10582 arose when, with no action on applicant's part, more than the six-month period required by

---

[8]It is felt that Hanna's suggestion that a carrier's petition, where an award of continuing benefits is in force, should request termination of liability because applicant's noncooperation prevents determination whether his disability still continues is not, in face of the specific statutory coverage, a proposal on his part that an inherent remedy of dismissal exists in cases where the nature and extent of liability is the pending issue.

[9]This section does not appear to be involved in that it cannot be said that the application shows upon its face that the applicant is not entitled to compensation.

that rule passed from the January 10, 1969, order taking the case off calendar. The referee did issue, on February 3, 1970, a notice of intention to dismiss for lack of prosecution in accordance with section 10582. He then, however, chose not to dismiss but to suspend proceedings for 90 days[10] to allow applicant an opportunity to obtain new counsel and to afford defendants a chance to obtain a medical examination.

It is apparent for several reasons that the ultimate dismissal was not for failure to activate the case under section 10582: the most reasonable interpretation of the February 19 notice is that the referee was going to set the case for hearing himself at the end of the 90-day suspension. He may have been waiting for the occurrence of the medical examination, but failure to submit to an examination cannot be viewed as a failure to activate under section 10582, since, as discussed *supra,* specific sanctions for such failure have been set forth and dismissal is not included. Also, the six months' period required by section 10582 had not expired. That period reasonably should have begun at the end of the 90-day suspension. Finally, as discussed *infra,* applicant was not afforded the notice and opportunity to be heard required by section 10582. Defendants appear to contend that the order of February 19 should be interpreted as a reservation upon the part of the board of a right to dismiss the case peremptorily and without notice if applicant failed to appear at a scheduled hearing or if it learned, even by hearsay means, that applicant had failed to cooperate in a medical examination. We believe that the pertinent wording of the order cannot be construed as anything more than a warning that, although other options had been chosen for such derelictions before, the choice of steps leading to dismissal would be the course which the referee would pursue if such failure ensued once more.

■ By dismissing when informed that applicant had failed to appear for examination by Dr. Malitz, the referee, in effect, imposed dismissal as a sanction for failure to submit to an examination, a sanction not authorized by statute or regulation. The Workmen's Compensation Appeals Board's opinion issued on denial of the petition for reconsideration suggests that applicant's failure to appear at the September 28 examination was merely considered in conjunction with his failure to cooperate in the other Malitz examinations in addition to "a long series of [other] obstructionist tactics." However, there is no specific provision in the Labor Code or rules for dismissal under these circumstances. ■ Of course, a referee can consider repeated dilatory conduct on the part of an applicant,

---

[10]It is clear from the February 19 notice that the hearing to be set at the end of that time was on the merits and not merely on the propriety of dismissal.

in deciding whether to take off calendar, dismiss, or hear under section 10562 where there is failure to appear for a hearing, or whether to dismiss under section 10582 where the case is not activated for a hearing within six months of being taken off calendar. The fact that part of the dilatory conduct is failure to appear for medical examinations certainly does not make dismissal under these rules inappropriate. However, the action here was not taken pursuant to either of these provisions.

■ Even if the referee has an inherent power to dismiss proceedings unduly extended by uncooperative applicants (a point we leave open), he should not exercise such power without affording the applicant notice and an opportunity to be heard on the issue of dismissal. Labor Code section 5507 and California Administrative Code, title 8, sections 10562 and 10582 provide for such notice and opportunity. Section 10594 of the Administrative Code provides that all dismissal orders not requested by the applicant "will issue only upon and after issuance of a 15 day notice of intention." ■ In addition, notice would seem to be a requisite of due process in such proceedings. Applicant here never had the opportunity to be heard on the issue of dismissal. The February 3 notice had been superseded by the February 19 order; that order simply warned that dismissal would be the action taken on an event (failure to cooperate in a medical examination) that had not occurred (and which would not alone justify dismissal). ■ By dismissing when informed of the occurrence of that event without further notice, the referee deprived applicant of an opportunity to contest the dismissal. As can be seen from our statement of facts, there was evidence that applicant did not receive notice of the September 28 examination and that, at the time of dismissal, applicant's new attorneys were in fact prosecuting the claim with diligence. Applicant had the right to present such evidence before dismissal was ordered.

The order of dismissal is vacated and the case remanded for further hearing.

Kaus, P. J., and Aiso, J., concurred.